# THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* ATKINSON.

[No. 7,466. Filed January 31, 1912. Rehearing denied June 18, 1912. Transfer denied November 1, 1912.]

1. APPEAL.—*Review.*—*Demurrer.*—*Exceptions to Conclusions of Law.*—Where exceptions to the trial court's conclusions of law raise the same questions as the demurrer to the complaint, and the facts found are in accord with the evidence and substantially follow the allegations of the complaint, a decision as to such conclusions necessarily determines the correctness of the ruling on the demurrer. p. 318.

2. EMINENT DOMAIN.—*Grant of Railroad Right of Way.*—*Extent of Right.*—*Damages.*—The grant of a railroad right of way does

not carry the right to go beyond its limits, and an assessment of damages for a right of way does not include compensation for wrongful acts after the acceptance of a deed or the making of an appropriation. p. 319.

3. MUNICIPAL CORPORATIONS.—*Streets.—Change of Grade.—Liability.*—Municipalities may establish grades and improve their streets in accordance therewith, and no liability will follow simply from the fact that the grading results in an injury to some private proprietor. p. 319.

4. MUNICIPAL CORPORATIONS.—*Streets.—Improvement.—Contract.—Liability.—Special Damage to Abutters.*—While a municipality may contract with a third person to make street improvements which it is authorized to make, and such person will not be liable in damages so long as the work is carefully and skilfully done in the manner authorized, it cannot legally authorize one of its streets to be invaded so as to cause special or peculiar damage to an abutting owner, without making the wrongdoer liable for such damage. p. 320.

5. EMINENT DOMAIN.—*Change of Railroad Grade.—Municipal Ordinance Authorizing Change.—Liability of Railroad Company.*—A municipal ordinance which established the grade of a street only so far as it was crossed by the tracks of a railroad, authorized the railroad company to raise its tracks and right of way so as to conform to such grade, and required that the street and sidewalks be caused to conform to such grade at the sole expense of the company, did not authorize the construction of such work so as to exempt the company from liability for damages to an abutting owner resulting from the change in such street, since such ordinance was for the accommodation of the railroad company and not for that of the general public. p. 320.

6. WATERS AND WATERCOURSES.—*Surface-Waters.—Special Findings.*—A special finding showing that a railroad company raised its roadbed and tracks to conform to the grade of a street as established by an ordinance, and that the change caused the surface-water to flow over and upon plaintiff's lot and into her well, and that loose dirt and gravel were by said surface-water washed on plaintiff's lot, does not show a liability against defendant, since it is not a finding that defendant collected a surplus of surface-water and discharged it in a body onto plaintiff's lot. p. 322.

7. WATERS AND WATERCOURSES.—*Railroads.—Liability for Flow of Surface-Water.*—The liability of a railroad company as to surface-water is the same as that of any other landowner, it being liable only when it collects surface-water on its land in a volume, or in a channel, and turns such water onto the lands of an adjoining owner, to his damage. p. 323.

8. RAILROADS.—*Liability for Flow of Water from Stock Cars.*—A railroad company is liable in damages, where water thrown by its servants into stock cars in passing trains, falls therefrom and carries the offal from the stock onto the land of plaintiff, thereby destroying her well and rendering her premises unsanitary and damaging their value. p. 323.

9. APPEAL.—*Review.—Special Findings.—Affirmance.*—Where, in an action against a railroad company for damages to abutting property caused by the flow of surface-water thereon and the change of grade of the street and railroad track, the facts found do not render appellant liable for turning surface-water onto appellee's land, but sufficiently show the liability of appellant on other grounds and damage therefrom to the full extent of the judgment, the judgment will be affirmed. p. 324.

From Jay Circuit Court; *John F. LaFollette,* Judge.

Action by Martha Atkinson against The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*G. E. Ross,* for appellant.

*Charles H. Shockney,* and *James J. Moran,* for appellee.

IBACH, P. J.—In the first paragraph of appellee's complaint it is averred that certain streets in the town of Redkey had been graded to conform to the original grade of appellant's railroad tracks, and that appellee had graded and filled her lot abutting on Union street, one of the streets which had been so graded; that afterwards appellant changed its grade, which required a change of the grade of said Union street along and in front of her property, and where such street crossed the right of way of appellant; that the work in building such grade was so carelessly and negligently done as to collect on its tracks and right of way surface-water, together with water which was taken from a tank and used to wash its dirty and filthy stock cars, and turn the same on her lot, and thereby her premises were made uninhabitable for dwelling purposes.

In the second and last paragraph it is alleged that for more than twenty years appellant had maintained its road on a certain grade, and that Union street in the town of Redkey,

on which appellee's lot abutted, had been improved to conform to such grade, and that appellee had filled and graded her lot, at a large expense, to correspond with the street grade, so that she would have free and uninterrupted access thereto, and that appellant afterward changed its grade by raising the same, and thereby the street along and in front of her property was required to be raised eighteen inches, and as a consequence thereof free access to her property was materially and permanently interfered with.

A separate demurrer to each paragraph was overruled and exception taken. Issues were formed by a general denial. The cause was tried by the court without the intervention of a jury. There was a special finding of facts, conclusions of law, and judgment thereon in favor of appellee, notwithstanding the motion of appellant for judgment in its favor. The errors assigned call in question the conclusions of law, together with the other rulings of the court above mentioned.

The questions presented by appellant with reference to the overruling of the separate demurrers are also raised by the exceptions to the conclusions of law, and as the facts

1. found were conceded in the argument to be in accord with the evidence, and substantially follow the allegations of the complaint, it will not be necessary for us to discuss the rulings of the court on the demurrers, for the decision of one necessarily determines the other. *Goodwine* v. *Cadwallader* (1902), 158 Ind. 202, 61 N. E. 939.

Appellee concedes the rule of law, that a railroad company has the right to improve, repair or change its roadbed, and raise or lower the grade thereof, when in its judgment any such change would improve the road or increase its efficiency, without being liable to respond in damages to an abutting property owner, upon the theory that such improvements do not constitute additional burdens not included in the original appropriation. It is insisted, however, that if in making any such change of grade the work is done in a careless and neg-

ligent manner, or the railroad company goes outside of its right of way for the purpose of building approaches on the highway necessarily raised on account of its having raised its tracks and roadbed at such highway crossing, and damages result to the abutting property owner, the railroad company must then answer for the damages sustained. Without deciding as to the correctness of the concession of appellee, as applied to this case, it is clear that her insistence is supported by principle and by direct authority.

This court has held, in considering a case very similar to the present, that "the grant of a right of way does not carry

2. the right to go beyond its limits, and the owner is not compensated by an assessment of damages for a right of way for wrongful acts after the acceptance of a deed or the making of an appropriation." *Baltimore, etc., R. Co.* v. *Quillen* (1904), 34 Ind. App. 330, 334, 72 N. E. 661, 107 Am. St. 183.

Appellant contends, however, that if any damage resulted to appellee by reason of the work complained of, she cannot recover, because the improvement was all done by, under and by virtue of an ordinance duly adopted by the town of Redkey; that by reason of such ordinance the grade of Union street was established, and the grade of said roadbed was raised to correspond with said established grade, and the approaches on Union street were built agreeably to the provisions of the ordinance, so as to restore such highway to its original usefulness. Appellant's position would be correct, and such ordinance would excuse at least a part of the damage sustained by appellee, if it can be said to be an ordinance establishing a grade on Union street "solely for public accommodation". *Chicago, etc., R. Co.* v. *Johnson* (1910), 45 Ind. App. 162, 90 N. E. 507.

The law is well settled that municipalities may establish grades and improve their streets in accordance there-

3. with, and no liability will follow, simply because of the fact that the grading results in an injury to some pri-

vate proprietor. It is also well settled that since the town of Redkey is authorized by law to improve its streets according to established grades, it might contract with a third person to make such improvements, and such person would not be required to respond in damages, so long as the work was carefully and skilfully done, and in the manner authorized and directed by such municipality. This is on the theory that the improvement is one of public use and benefit, and the party whose property was made less easy of access by reason of such general improvement shared in the general benefit, and he cannot be heard to complain, in the absence of a statute giving redress therefor.

It is equally true, however, that the common council of a city, or the board of trustees of an incorporated town, cannot legally authorize one of its streets to be invaded so as to cause special or peculiar damage to the abutting owner, without making the wrongdoer liable for such damage. *Town of Rensselaer* v. *Leopold* (1886), 106 Ind. 29, 31, 5 N. E. 761; *Uline* v. *New York Cent., etc., R. Co.* (1886), 101 N. Y. 98, 4 N. E. 536, 54 Am. Rep. 661.

One of the main questions involved in this appeal then is, Does the ordinance in question save appellant from responding in damages to appellee for constructing the approaches on Union street, along and in front of her property, in such a manner as materially to interfere with the ingress to and egress from her lot? This leads us to an examination of the court's finding nine, and so much thereof as is essential to a full consideration of this branch of the case we set out in full: "The board of trustees of the town of Redkey, by ordinance duly passed, established the following grade for Union street, to-wit: 'Beginning at a point in the center of said street 160 feet south of the center of the main track of the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company * * * running thence northerly along the center of said street 135 feet in an ascending grade * * * running thence northerly on a level grade 40 feet,

thence northwardly on a descending grade 85 feet to a point in the center of said street. * * * That the Pittsburgh, etc., Railway Company is hereby authorized and granted permission to raise its tracks and right of way at the intersection with said Union street so that its tracks shall conform to the grade herein established, and in so doing said railroad company shall cause said streets to conform to the grade herein established at their own sole expense and without any cost or expense to said town of Redkey. That said railway company shall be and is hereby required to make all cross streets intersecting with that part of Union street affected by the grade herein established of easy approach of proper grade and shall cause and make all of the sidewalks in any and all of said streets to be constructed in a safe and workmanlike manner and to conform to the grade of the street so as to insure ease of approach and safety to the traveling public and shall supply and put in all necessary drainage, the entire cost thereof to be borne by said railroad company. That said railway company shall be and is hereby required to construct that portion of said streets upon which the grade is herein established to conform to said grade.''

This court in the case of *Chicago, etc., R. Co.* v. *Johnson, supra,* said: ''The reasoning applicable to the change of grades by a city does not therefore apply to a grant of power to a commercial railroad to change the grade and occupy the street with its tracks, and wherever it fails to appear that the change of grade is made solely for the public accommodation the railroad making it must answer for the consequences.'' By the above finding it is made to appear that the ordinance does not establish the grade for Union street, but only for the portion where the same is crossed by the tracks of the railroad company, and the portion whereon the approaches to such railroad crossing must be built. It appears from this finding that the ordinance was adopted by the town of Redkey to accommodate appellant, rather than the public,

who doubtless would have been better suited had the crossing remained in its original condition. We are forced to conclude that by the adoption of this ordinance there was an effort made to do indirectly what could not have been done directly, and it therefore furnished no license to appellant to construct the work complained of, and to deprive appellee of recovering such damages as she might be able to show actually came to her on account of the building of the approaches and embankments constructed in front of her property, and depriving her of free access thereto. The board of trustees of the town of Redkey had the power to fix the grade of its streets and improve them for the public good as streets, but an ordinance evidently passed only to fix a grade so far as it might affect appellant, and not the general public, is not in accord with the purpose of the law, and will not relieve appellant from liability. Such is the effect of the finding of the court.

That portion of the court's finding nine which relates to the charge of turning surface-water from appellant's right of way onto appellee's lot is as follows: "In the month of May, 1903, defendant raised its said railroad, roadbed and grade at the point where the same is crossed by said Union street, to conform to the grade of said Union street as established by said ordinance and at the same time graded and improved that part of said Union street to conform to said grade so established by said ordinance; * * * that the change of said grade of said railroad and roadbed and of said Union street until May, 1905, when said lot was filled prior to the commencement of this suit, caused the surface-water falling on said railroad and roadbed and on said Union street and a part of the adjoining lands to flow over and upon plaintiff's said lot and into her said well. That loose dirt and gravel from said roadbed and said street were by said surface-water washed upon plaintiff's said lot and standing there caused a slime to be and stand upon said lot for

a considerable length of time after each heavy rain."
This is not a sufficient finding that appellant collected a
surplus of surface-water on its right of way and discharged
it in a body on appellee's lot, but finds simply that the
surface-water which flowed onto her lot was surface-water
which flowed there naturally, and for which appellant can-
not be held responsible, for it does not appear that appel-
lant in anyway increased or altered the natural flow of sur-
face-water to the damage of appellee. The liability
of a railroad company as to surface-water is the same
as that of any other landowner. It may repel sur-
face-water flowing onto its land from other lands, without
any liability to an adjoining owner. It is not liable for the
natural flow of surface-water from its land onto that of an
adjoining proprietor, but is liable only when it collects sur-
face-water on its land into a volume or into a channel, and
turns such water onto the lands of an adjoining owner, to
his damage.

The court's finding ten is in part as follows: "The de-
fendant had erected and maintained a water tank on its
right of way, and the defendant's servants threw
water from such tank into stock cars in passing trains
containing hogs and which water fell after passing
through said cars upon such roadbed carrying with it from
said cars some of the offals of said stock, a part of which
was carried across said right of way and passed over and
upon plaintiff's said lot." Finding thirteen shows that the
washing of the contents of such cars onto plaintiff's prem-
ises by appellant destroyed her water well, and rendered
her premises filthy, unsanitary and undesirable as a home
and residence lot, and greatly damaged their value. These
findings show strong grounds for relief, for the acts of appel-
lant therein set out are such as the law will not justify, and
for damage occasioned thereby appellant must answer to
appellee. It appears from other findings that the property
which appellee owned abutting on appellant's right of way

and Union street had been filled to correspond with
9. the previous grade of the street, had been improved
with a house and other buildings, and that the portion not covered by the buildings was used for gardening.
It also appears that by reason of the change in the grade of
the street and the railway roadbed, as set forth above, her
lot was rendered less accessible from the streets, that its surface drainage was destroyed, that prior to the bringing of
this action, she, in order to make her lot accessible, and to
prevent the surface-water and filthy water aforesaid from
washing onto her premises, and to make of said premises
a fit and healthful place to live, and a safe and pleasant
home, filled her lot with soil, and raised its grade to a height
of eighteen inches above its previous grade, and raised her
buildings in conformity, and in such work expended the sum
of $325; that the rental value of her premises before the
change in grade of defendant's roadbed was $9 per month,
and immediately after, by reason of such change, and by
reason of filth from stock cars being washed down and deposited on said premises, was $3 per month; that the reasonable value of her premises before the change of grade in
the roadbed and approaches thereto was $1,000, and immediately after, by reason of such change, was $550. As conclusions of law the court stated that appellee was entitled to
recover from appellant the sum of $450 in damages, and
her costs.

From the facts found, appellant would not be liable for
turning surface-water onto appellee's land, but, as we have
seen, the finding of facts sufficiently shows liability of appellant on other grounds, and damage therefrom to the full
extent of the judgment.

The judgment is affirmed.

NOTE.—Reported in 97 N. E. 353. See, also, under (1) 3 Cyc.
223; (2) 15 Cyc. 995; (3) 28 Cyc. 839; (4) 28 Cyc. 1086; (5) 15
Cyc. 664; (6, 7) 40 Cyc. 643; (8) 33 Cyc. 642; (9) 3 Cyc. 221. As
to changing street grade from the level of abutting property con-

sidered in the aspect of a "taking" from the property owner, see 16 Am. St. 615; see, also, note to *Mordhurst* v. *Ft. Wayne, etc., Co.* (Ind.) 106 Am. St. 265. As to adjacent landowners' rights and duties *inter sese* with respect to flowage, see 85 Am. St. 707; see, also, note to *Baltimore, etc., R. Co.* v. *Quillan* (Ind.) 107 Am. St. 190. On the question of the liability of a railroad for conducting surface-water through its embankment and onto the property of an adjoining owner, see 12 L. R. A. (N. S.) 680.